UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| HAROLD H. HODGE, JR.,                 ) | |
|                                                        ) | |
|                        Plaintiff,              ) | Civil Action No. 12-104 (BAH) |
|                                                        ) | |
|            v.                                       ) | |
|                                                        ) | |
| PAMELA TALKIN, et al.,                ) | |
|                                                        ) | |
|                        Defendants.          ) | |
| _____) | |

DEFENDANTS' MOTION TO DISMISS
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Pamela Talkin, Marshal of the Supreme Court of the United States, and Ronald C. Machen Jr., United States Attorney for the District of Columbia, hereby move to dismiss the First Amended Complaint in this case for failure to state a claim upon which relief can be granted.  As explained in detail in the attached memorandum of points and authorities, the Supreme Court plaza is a nonpublic forum under the First Amendment, so that the restriction on expressive activity set forth in 40 U.S.C. § 6135 is constitutional so long as it is reasonable and content-neutral.  Because section 6135 plainly qualifies, and because the statute is neither overly broad nor unconstitutionally vague, the first three counts of the First Amended Complaint should be dismissed.  In addition, the fourth and fifth counts should be dismissed because the statute does not impermissibly discriminate among forms of speech.

In the alternative, summary judgment should be granted in favor of defendants under Fed.

R. Civ. P. 56 because the indisputable facts make clear that defendants are entitled to judgment

as a matter of law.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar No. 498610
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No.  924092
Acting Civil Chief

   /s/  *Jane M. Lyons*
JANE M. LYONS, D.C. Bar No. 451737
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-7161

Of Counsel:
SCOTT S. HARRIS
Counsel
Supreme Court of the United States
1 First Street, N.E.
Washington, D.C. 20543

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
HAROLD H. HODGE, JR.,                   )
                                        )
                    Plaintiff,          )        Civil Action No. 12-104 (BAH)
                                        )
        v.                              )
                                        )
PAMELA TALKIN, et al.,                  )
                                        )
                    Defendants.         )
_____)


MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Since 1935, when the Supreme Court moved into its own purpose-built home, it has been located in a four-story, marble-clad building designed in a classical style that is harmonious with the surrounding and iconic buildings of the United States Capitol and Library of Congress. The Supreme Court has its own police force charged with protecting, securing and controlling the facilities. *See* 40 U.S.C. § 6121.  In *United States v. Grace*, 461 U.S. 171 (1983), the Supreme Court itself decided that the sidewalks around the perimeter of its grounds are a public forum under the First Amendment.  As a result, various forms of demonstrations and protests regularly take place on the perimeter sidewalk directly in front of the Supreme Court.  *See* Declaration of Timothy Dolan ("Dolan Dec."), ¶ 5 (attached).  Any person can engage in speech or other expressive conduct on the sidewalk.  *See id.*

Plaintiff Harold Hodge, however, chose not to confine his expressive activities to the sidewalk.  At approximately 11:35 a.m. on January 28, 2011, plaintiff was wearing a two foot by three foot sign displaying the message "The U.S. Gov. Allows Police to Illegally Murder And

Brutalize African Americans And Hispanic People." First Amended Complaint ("Complaint"), ¶ 18. He went to the plaza at the Supreme Court "to engage in expression on a political matter of public importance ..." *Id*. ¶¶ 18-20. He stood on the plaza approximately 100 feet from the main entrance to the Supreme Court. *Id*. After a few minutes, a Supreme Court Police Officer approached plaintiff and warned him three times that he was violating the law, but plaintiff refused to leave the plaza and he did not remove his sign. *Id.* ¶¶ 21-22. Shortly thereafter, plaintiff was peacefully arrested and charged with violating 40 U.S.C. § 6135 which prohibits displaying "a flag, banner, or device designed or adapted to bring into public notice a party, organization or movement." *Id*. ¶¶ 23-24.

Although plaintiff subsequently agreed to stay away from the Supreme Court for six months in exchange for dismissal of the charge of violating 40 U.S.C. § 6135, and it is undisputed that charge was dismissed effective on September 14, 2011, plaintiff "desires to return to the plaza area in front of the Supreme Court building and [to] engage in peaceful, non-disruptive political speech and expression in a similar manner to his activity on January 28, 2011" as well as to picket, sing, and pass out leaflets. *Id*. ¶¶ 26-30.

Thus, Plaintiff Harold Hodge has filed this civil action in an effort to invalidate the federal statute that restricts demonstrations, the display of signs, and other forms of expressive activity throughout most of the grounds of the Supreme Court of the United States. He claims that the statute violates his rights under the First and Fifth Amendments in various ways. As explained in detail below, all of his claims are meritless. The federal statute that precludes demonstrations on the Supreme Court plaza has been repeatedly upheld against constitutional challenge in the District of Columbia courts, and the reasoning of those decisions is sound. Most importantly, the plaza is a nonpublic forum under First Amendment analysis, and the statute

plaintiff now challenges is both reasonable and viewpoint neutral.   Thus, the challenged statute

is constitutional, and the First Amended Complaint should be dismissed.

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the complaint. *See Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A motion to dismiss should be granted if the

complaint fails to "'state a claim to relief that is plausible on its face.'"  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555, 570 (2007) (dismissal is appropriate if the complaint fails to

present "enough facts to state a claim to relief that is plausible on its face. . . Factual allegations

must be enough to raise a right to relief above the speculative level,. . . on the assumption that all

the allegations in the complaint are true (even if doubtful in fact). . .") (citations omitted); *accord*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A "court need not accept inferences drawn by [the]

plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI*

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A court also need not accept legal

conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949-50.  In

resolving a motion to dismiss, a court may consider "the facts alleged in the complaint,

documents attached as exhibits or incorporated by reference in the complaint, and matters about

which the Court may take judicial notice." *Gustave-Schmidt v. Cha*o, 226 F. Supp. 2d 191, 196

(D.D.C. 2002); see *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.

1997).  The Court may also take judicial notice of the physical location and characteristics of the

Supreme Court plaza.  See Fed. R. Evid. 201(f); *Oberwetter v. Hilliard*, 680 F. Supp.2d 152,

156-57 n.1 (D.D.C.. 200), *aff'd*, 639 F.3d 545, 552 n.4 (D.C. Cir. 2011).

"Summary judgment is appropriate when the pleadings and the evidence demonstrate that

'there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.'" *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 154 (D.D.C. 2007) (*quoting*

Fed. R. Civ. P. 56(c)).   The party moving for summary judgment bears the initial responsibility

of showing an absence of a genuine issue of material facts.   *Id.*   In deciding whether a genuine

issue of material facts exists, the court must "accept all evidence and make all inferences in the

non-movant's favor."   *Id.*, *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).   "A

non-moving party, however, must establish more than the mere existence of a scintilla of

evidence in support of its position."   *Id.* (citations and internal quotation marks omitted).   That is,

"'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may

be granted.'"   *Id.*, *quoting Anderson,* 477 U.S. at 249-50.

## BACKGROUND

*1.   The Supreme Court Plaza's Location and Physical Characteristics*

The Supreme Court grounds are defined to include the area within the curbs of the four

streets surrounding the Court, *i.e.*, First Street, N.E.; Maryland Avenue, N.E.; Second Street,

N.E.; and East Capitol Street.   *See* 40 U.S.C. § 6101(b).   The Supreme Court plaza is an oval-

shaped area generally between the front sidewalk near First Street and the large set of steps

leading up to the front entrance of the Court building.   *See* Dolan Dec. ¶ 5 & diagram.   The

plaza, which at its largest extends 252 feet from north to south, is set off from the front sidewalk

by a set of eight steps, and a wall separates it from the adjoining natural space.   *Id.*   The plaza

also stretches about 98 feet from the sidewalk to the steps leading to the front entrance.   While

the perimeter sidewalks are made of concrete, the plaza is made of marble and is thus visually

distinct from the sidewalk.   *Id.*   The plaza is an open-air area and the Supreme Court is visited

every year by hundreds of thousands of tourists and other visitors.   *See* Dolan Dec. ¶ 2.   As noted

above, various forms of demonstrations and protest regularly occur on the perimeter sidewalk directly in front of the plaza. *See* Dolan Dec. ¶¶ 4-5.

2. *Section 6135 and Its Application*

The statute that plaintiff challenges, now codified at 40 U.S.C. § 6135, was enacted in 1949, as part of a package of statutes addressing security at the Supreme Court. The statute provides as follows:

> It is unlawful to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, or to display in the Building and grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization or movement.[1]

The statute thus consists of two clauses: the "Assemblages Clause," which prohibits parading, standing or moving in processions or assemblages, and the "Display Clause," which prohibits displaying a flag, banner or other device designed or adapted to bring into public notice a party, organization or movement. The Court's "Building and grounds" are defined to include both the Court building itself and the area extending to the curbs of the four streets (First Street, Maryland Avenue, Second Street and East Capitol Street) surrounding the Court. *See* 40 U.S.C. § 6101(b)(1). Violation of section 6135 is a misdemeanor punishable by up to 60 days in prison and a fine of up to $5,000. *See* 40 U.S.C. § 6137(a); *see also* 18 U.S.C. §§ 3559(a)(7) and 3571(b)(6). Prosecutions may be undertaken in the Superior Court of the District of Columbia or in this Court, upon information by the United States Attorney or an Assistant United States Attorney.

---

[1]     The statute was initially codified at 40 U.S.C. § 13k. It was recodified at section 6135 in 2002, *see* Pub. L. 107-217, § 1, Aug. 21, 2002, 116 Stat. 1183, as part of a general revision of Title 40 of the U.S. Code. There were minor stylistic changes to the statute at the time of the recodification, but no substantive changes were intended. *See* H.R. Rep. No. 107-479, at 1-3, reprinted at 2002 U.S.C.C.A.N. 827, 828-29).

In *United States v. Grace*, 461 U.S. 171 (1983), the Supreme Court itself had the opportunity to address the constitutionality of section 6135 as applied to the sidewalks near the perimeter of the Supreme Court grounds. The plaintiffs in that case were two individuals who sought to engage in expressive activities on the sidewalks: one of the plaintiffs sought to distribute leaflets addressing political issues, and the other sought to display a sign with the text of the First Amendment. Both had been warned by the Supreme Court Police that their activity would violate section 6135, and they initiated a civil action in this court, seeking a declaratory judgment that their conduct would be protected by the First Amendment.

The Supreme Court agreed, concluding that application of the statute to expressive conduct on the sidewalks around the perimeter of the Court grounds would violate the First Amendment. It reasoned that these sidewalks are indistinguishable from any other sidewalks in Washington, D.C., and that they should not be treated differently from those other sidewalks from the perspective of the First Amendment. *See Grace*, 461 U.S. at 179. Sidewalks have traditionally been held open to the public for expressive activities, and they have also been typically viewed as public fora for the purposes of the First Amendment. *Id.* Because section 6135 is an outright ban on expressive activities at the Supreme Court, it could not be seen as a reasonable time, place, and manner restriction. *Id.* at 183. As a result, the Court held, the statute is unconstitutional as applied to the perimeter sidewalks. *Id.* In light of *Grace*, the Supreme Court Police does not enforce section 6135 on the perimeter sidewalks. *See* Dolan Dec. ¶ 5.

Since *Grace*, the District of Columbia Court of Appeals has held that the rest of the building and grounds of the Supreme Court is a nonpublic forum for First Amendment purposes, and that the restrictions on expressive activity contained in section 6135 are constitutional. *See Lawler v. United States*, 10 A.3d 122, 124 (D.C. 2010); *Potts v. United States*, 919 A.3d 1127,

1129 (D.C. 2007); *Bonowitz v. United States*, 741 A.2d 18, 22 (D.C. 1999). The Court plaza is a nonpublic forum, that court has held, because it is not generally open for expressive activity by members of the public. *See Bonowitz*, 741 A.2d at 22. Although there are very limited classes of speakers who are given access to the plaza (as discussed in more detail below, this principally includes attorneys in cases that have just been argued in the Court, along with a small number of filmmakers who have obtained specific permission to film there), this very selective access does not convert the plaza into a public forum. *Id.* The D.C. Court of Appeals has also recognized that the restrictions on speech contained in section 6135 are both reasonable and viewpoint neutral: they are reasonable because they serve the dual purposes of allowing unimpeded access to the building and preserving the appearance of the Court as a body not swayed by external influence, and they are viewpoint neutral because they are applied to bar all conduct in violation of the statute. *Id.*; *see also Lawler*, 10 A.3d at 125-26 ("If anyone carries or unfurls any kind of banner or sign on the plaza, they're told to remove it…. They're told they cannot carry a sign at all whatsoever, regardless of what it says, on the plaza.").

The District of Columbia courts have also imposed a limiting construction upon the Assemblages Clause of section 6135 in order to save it from any possible constitutional challenge. As noted above, the text of the Assemblages Clause makes it illegal to "parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds." As the District of Columbia Court of Appeals recognized, the literal language of section 6135 may be read to prohibit any type of group activity on the Court grounds, including congregation on the plaza by groups of tourist, or even by Court employees. *See Pearson*, 581 A.2d at 356.

> The clause is, however, as the trial judge ruled and this court held in [*United States v. Wall*, 521 A.2d 1140 (D.C. 1987)], susceptible to a narrowing construction, confining the scope of the clause to protection of the Supreme Court building and grounds and of persons and property

> within, as well as the maintenance of proper order and decorum, and to preserve the appearance of the Court as a body not swayed by external influence.

581 A.2d at 357 (internal citations and quotation marks omitted).  The court found that this limiting construction is a natural one because it focuses application of the statute upon the types of activity that the statute was plainly designed to address: demonstrations on the Supreme Court grounds and use of those grounds as a forum for voicing private views.  *Id.*  With this limiting construction in place, the D.C. Court of Appeals has upheld the Assemblages Clause against overbreadth and vagueness challenges.  *See Pearson*, 581 A.2d at 359; *Bonowitz*, 741 A.2d at 24.

   *3.  Plaintiff's Claims*

   Plaintiff asserts that he "desires to return to the plaza area in front of the Supreme Court building and engage in peaceful, non-disruptive speech and expression in a similar manner to his activity on January 28, 2011," but is deterred and chilled from doing so by the threat of arrest under section 6135.  Complaint, ¶¶ 28, 30.  Plaintiff filed his initial complaint in this case on January 23, 2012, and he filed an amended complaint on May 15, 2012.  The amended complaint now argues that section 6135 is unconstitutional in five different ways.  In Count One, plaintiff claims that both the Assemblages and Display Clauses are unconstitutional restrictions on his free speech rights under the First Amendment.  Complaint, ¶¶ 33-34.  In Count Two, he argues that both clauses are unconstitutionally overbroad under the First and Fifth Amendments.  Complaint, at ¶¶ 35-36.  In Count Three, he charges that both clauses are unconstitutionally vague under the First and Fifth Amendments.  Complaint, at ¶¶ 37-38.  In Count Four, he argues that the Display Clause, as applied in practice, discriminates in favor of corporate speech and against political speech.  Count Four also claims that the Display Clause, as applied in practice, discriminates against speech critical of the United States government.  Both aspects of Count

Four rely upon supposed violations of the First Amendment.  *See* Complaint, at ¶¶ 39-41.  And

in Count Five, he argues that the Display Clause, as applied in practice, violates the Equal

Protection Clause of the Fifth Amendment because it discriminates in favor of the United States,

litigants before the Supreme Court, and the attorneys for those litigants.  *See* Complaint, at ¶¶ 42-

43.  Plaintiff seeks a declaratory judgment that section 6135 is unconstitutional, and an

injunction against prosecuting Plaintiff and others for violating the statute.  *See* Complaint,

Prayer for Relief.

## **ARGUMENT**

1. Section 6135 Does Not Violate Plaintiff's Rights Under the First Amendment

    a. The Supreme Court Plaza Is a Nonpublic Forum

The degree to which a government restriction on speech is permitted depends in large

part upon the type of forum where the speech is restricted.  The First Amendment does not give

members of the public an unfettered right to express their views on government property

"'whenever and however . . . they please.'"  *Greer v. Spock*, 424 U.S. 828, 836 (1976); *see*

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985) ("Nothing in

the Constitution requires the Government freely to grant access to all who wish to exercise their

right to free speech on every type of Government property without regard to the nature of the

property or to the disruption that might be caused by the speaker's activities."); *U.S.P.S. v.*

*Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981) ("[T]he First Amendment does

not guarantee access to property simply because it is owned or controlled by the government.").

Members of the public have the strongest free speech rights in a "traditional public forum," a

space that has "immemorially been held in trust for the use of the public and, time out of mind,

[has] been used for purposes of assembly, communicating thoughts between citizens, and

discussing public questions." *See Perry Education Association v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).  A traditional public forum is property that has as "a principal purpose … the free exchange of ideas." *See International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 679 (1992), quoting *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 800 (1985).  "Traditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998), quoting *Perry Ed. Ass'n*, 460 U.S. at 45.  Restrictions on speech in a traditional public forum are subject to strict scrutiny.  *See Cornelius*, 473 U.S. at 800.  Under that analysis, reasonable time, place and manner restrictions are permissible, but restrictions based upon the content of speech must be narrowly tailored to serve a compelling government interest, and restrictions based upon viewpoint are prohibited.  *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009).

The second category of forum is the "designated public forum."  A designated public forum is a space or channel that the government has specifically designated for assembly and speech either for the public at large, or limited to certain speakers or certain subjects.  *See Cornelius*, 473 U.S at 802.  This type of space is not created simply by inaction or permitting discourse, but instead only where the government intentionally opens a space for public discourse.  *Id.*  Because the government creates a public forum only by intentionally opening a property for public discourse, courts have "looked to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum."  *Id.*  The courts also examine "the nature of the property and its compatibility with expressive activity to discern the government's intent."  *Id.*  "If the

government excludes a speaker who falls within the class to which a designated public forum is made generally available, its action is subject to strict scrutiny," just as in a public forum. *Forbes*, 523 U.S. at 677.[2]

Finally, property that is neither a public forum nor a designated public forum is a either a "nonpublic forum" or not a forum at all.  *See Forbes*, 523 U.S. at 677.  In a nonpublic forum, the government can regulate speech, "as long as the restrictions are reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  *Cornelius*, 473 U.S. at 802; *see also Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 188 (2007) ("[I]t is also black-letter law that, when the government permits speech on government property that is a nonpublic forum, it can exclude speakers on the basis of their subject matter, so long as the distinctions drawn are viewpoint neutral and reasonable in light of the purpose served by the forum.").

Thus, it is the unique characteristics of a particular site (including the site's location and purpose) that determine whether or not it is a public forum.  *See United States v. Kokinda*, 497 U.S. 720, 728-29 (1990) (plurality opinion) (not "every public sidewalk is a public forum"; "the location and purpose of a publicly owned sidewalk is critical to determining whether [it] constitutes a public forum"); *Grace*, 461 U.S. at 179-80 (relying on the unique characteristics of the sidewalks surrounding the Supreme Court building in concluding that they are public forums).  The policies and historical usage of the Supreme Court plaza make clear that it is a nonpublic forum, as the District of Columbia Court of Appeals has consistently found.  *See*

---

[2]  Some courts have also identified a "limited public forum" as a subset of the "designated public forum" category.  Restrictions in a designated public forum that is open to all speakers are subject to the same standard of review as those in a traditional public forum, but the government can restrict a limited public forum to speech that is compatible with the particular purpose of the forum.  *See Doe v. City of Albuquerque*, 667 F.3d 1111. 1128 (10th Cir. 2012*).

*Lawler*, 10 A.3d at 124; *Potts*, 919 A.2d at 1129; *Bonowitz*, 741 A.2d at 22.  As explained further below, there are solid reasons for this Court take the same view of the same issue.

The plaza simply has not, "time out of mind, been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  *See Perry Ed. Assn*, 460 U.S. at 45.  Quite the contrary is true.  The plaza has not been used for any of these purposes since at least 1949, when the predecessor to section 6135 was enacted, and it appears that the same restrictions were in place even before enactment of the statute.  *See* Dolan Dec. ¶ 7. In order to determine whether activity is permitted, the Court Police look to the language of section 6135, utilizing the narrowing construction of the Assemblages Clause that has been adopted by the District of Columbia courts.  *Id.*, at ¶¶ 4-5, 7.  When individuals or groups are determined to be in violation of the statute, members of the Supreme Court Police generally inform them of the violation and of the fact that they will be arrested if they do not discontinue their conduct or leave the plaza.  *Id.*, at 7.  Although the fact that expressive activities have been prohibited on the plaza for more than sixty years may not be dispositive, *Henderson*, 964 F.2d at 1183, it is highly significant. *See Grace*, 461 U.S. at 177 (identifying public forums as places that have "historically [been] associated with the free exercise of expressive activities" (emphasis added)); *Marlin v. Dist. of Columbia Bd. of Election & Ethics*, 236 F.3d 716, 719 (D.C. Cir. 2001) (in holding that the interior of a polling place is a nonpublic forum, the D.C. Circuit stated that, because there have been "longstanding limitations on polling place speech, we do not see how the polls can fairly be described either as 'places which by long tradition or by government fiat have been devoted to assembly and debate,' or as places designated by the government 'for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects'").

The physical nature of the plaza also supports this same conclusion.  The plaza extends approximately 98 feet from the perimeter sidewalk to the iconic steps leading up to the front entrance of the building, and approximately 252 feet from the north to south across the width of the plaza.  Dolan Dec. ¶ 6.  It is separated from the perimeter sidewalk by eight steps.  *Id*.  These steps and the plaza itself are made of marble stone, in contrast with the perimeter sidewalks, which are made of concrete like many other sidewalks throughout the city.  *Id*.  In these circumstances, even a casual observer would have no difficulty recognizing that this grand plaza is a very different type of space from the typical sidewalk throughout the rest of the city of Washington.  *See Oberwetter*, 639 F.3d at 552-53 (holding that interior of Jefferson Memorial is nonpublic forum based in part on physical characteristics of the space).

Although the plaza is open to the public, that characteristic is insufficient to transform it into a public forum; the space must be open for public expression, which the plaza indisputably is not.  *See Greer v. Spock*, 424 U.S. 828, 836 (1976); *ISKCON v. Lee*, 505 U.S. 672, 679 (1992) (for a particular site to constitute a traditional public forum, it must have "as 'a principal purpose . . . the free exchange of ideas.'") (ellipses in original and internal quotation marks omitted).  Indeed, it has long been recognized that there is an important interest in protecting the appearance of the courts as free from outside influence or the appearance from such influence.  *See, e.g.*, *Cox v. Louisiana*, 379 U.S. 559, 562 (1965).

A finding that the Court plaza is a nonpublic forum is entirely consistent with, and indeed implicit in, the ruling in *Grace* that sidewalks around the perimeter of the Supreme Court are a public forum.  Indeed, the fact that the Court in *Grace* so carefully carved out the perimeter sidewalks as a public forum, while pointedly declining to apply the same reasoning to the plaza or other parts of the Court grounds, suggests strongly that it recognized the important differences

between the two spaces.  The Court emphasized in *Grace* that the sidewalks around the perimeter of the Court grounds were a public forum primarily because they were largely indistinguishable from other sidewalks throughout the city.  *Grace*, 461 U.S. at 179; *see also id.*, at 180 ("There is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court ground that they have entered some special enclave.").  But the Court plaza is a very different and distinct type of space from the sidewalk: the plaza is set above the sidewalk, consists of a different material, is a contrasting shape, and is more obviously a part of the Court grounds itself.

Likewise, the only two types of limited expression permitted on the plaza also do not alter its character as a nonpublic forum, since they are a far cry from the type of demonstration in which Plaintiff in this case was engaged.  First, the Court allows attorneys and parties in cases before the Court to address the media on the plaza directly after oral argument in the case.  *See* Dolan Dec. ¶¶ 7, 9.  This typically occurs for less than one hour, and only on the approximately 40 days each year when the Court hears oral arguments.  Members of the media must have press credentials issued or recognized by the Supreme Court's Public Information Office to participate in this session, which occurs near the sidewalk on the southern portion of the plaza.  *Id.* at ¶ 9.  Second, the Court on very limited occasion allows filmmakers to film on the plaza.  *See id.* Filming must be approved by the Court's Public Information Office, and is typically authorized only on weekends or after working hours.

In light of these limited exceptions relating closely to the business of the Supreme Court, it is clear that the plaza is a not a traditional public forum.  *See Bonowitz*, 741 A.2d at 23-24 (holding that plaza is a nonpublic forum and specifically rejecting argument that protesters were targeted for their views because "only persons associated with a case before it, news media and

certain film media [are permitted] to use the plaza"). *Cf. Henderson v. Lujan*, 964 F.2d 1179

(D.C. Cir. 2002) (commenting that the "paths leading to the [Vietnam Veterans] Memorial wall"

might be nonpublic forums by reasoning that the paths' "evidently more specialized use may

outweigh the attributes that would otherwise mark them as public forums," and observing that

"when government has dedicated property to a use inconsistent with conventional public

assembly and debate . . . [,] then the inconsistency precludes classification as a public forum.").

        Nor could the plaza conceivably be viewed as a designated public forum, at least in any

way that could conceivably be helpful to plaintiff's claims here.  As noted above, a designated

public forum is a space that the government has affirmatively designated for assembly and

speech either for the public at large, or limited to certain speakers or certain subjects.  *See*

*Cornelius*, 473 U.S at 802.  The "touchstone" for determining whether the Government has

designated a forum public is its "intent in establishing and maintaining" that forum. *Stewart*, 863

F.2d at 1016.  To ascertain the Government's intent, courts examine not only the Government's

"stated purpose" but also "objective indicia of intent," such as "the nature of the property, its

compatibility with expressive activity, and the consistent policy and practice of the government."

*Stewart*, 863 F.2d at 1016-17; *see also Ark. Educ. Television Comm'n*, 523 U.S. at 677.  The

government certainly has not authorized the plaza for assembly and speech by the public at large.

As explained below, the Court's policy of allowing press availability after arguments and

allowing limited access to film crews does not make the plaza a designated public forum either.

        As an initial matter, there is a real question about whether allowing attorneys and parties

in cases before the Court to address the media is even a form of expression that might support the

plaza's status as a designated public forum, since these may better be viewed as a part of the

Court's official business.  *See Bryant v. Gates*, 532 F.3d 888 (D.C. Cir. 2008) (holding that the

classified sections of newspapers published on military bases were a nonpublic forum based on the "fundamental fact" that the papers were "intended solely to 'facilitate accomplishment of the command or installation mission[,]'" and served as  "conduit" between command and service members).  But in any event, "the government does not create a designated public forum when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use it."  *See Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998); *see also Perry*,  460 U.S. at 47 (school policy allowing some access to internal mail system did not create designated public forum because policy required permission from individual school principal); *Bonowitz*, 741 A.2d at 22 (citing *Forbes*).  Filmmakers who may wish to film on the plaza are required to obtain advance permission from the Court in order to be authorized to do so.  *See Dolan Dec. ¶ 9.*  Similarly, members of the press who may wish to film arguing attorneys after oral argument must have valid press credentials recognized by the Supreme Court Public Information Office.  *See id.*

What is more, even if these activities on the plaza might arguably create a designated public forum (which defendants respectfully submit they do not), this would not help plaintiff in this case because the only parties who can claim a right of access to a designated public forum are those in the same class as the speakers who have been authorized to engage in expressive activities there.  *See Perry*, 460 U.S. at 48 ("[E]ven if we assume that by granting access to the Cub Scouts, YMCA's, and parochial schools, the School District has created a 'limited' public forum, the constitutional right of access would in any event extend only to other entities of a similar character.").  Because plaintiff's type of speech is in an entirely different category from these, he may not prevail in this action even if the Court were to assume, *arguendo*, that the

plaza were a designated public forum.  As a result, this Court need not even reach the question of whether the plaza is a designated public forum for these purposes.

In analogous circumstances, the D.C. Circuit recently recognized that the interior of the Jefferson Memorial is a nonpublic forum, and that similarly broad restrictions on expressive activity there are consistent with the First Amendment.  *See Oberwetter v. Hilliard*, 639 F.3d 545, 552 (D.C. Cir. 2011).  The plaintiff in that case was an individual who sought to engage in a form of expressive dance at the memorial "to celebrate and honor the former President."  *Id.* at 548.  In the first step of determining whether this activity was protected, the D.C. Circuit first concluded that the memorial is a nonpublic forum for First Amendment purposes.  In reaching this conclusion, it recognized that the interior of this space has not been traditionally used for purposes of assembly, communication of thoughts between citizens, or discussing public questions.  *Id.* at 552.  The Circuit also acknowledged that the Jefferson Memorial is open to the public and that visitors regularly "talk loudly, make noise, and take and pose for photographs" in that space, but it found these facts not to be dispositive because of the efforts to which the Park Service goes to maintain the site as one of quiet contemplation.  *Id.* at 552-53.

In summary, the Court should conclude that the plaza of the Supreme Court is a nonpublic forum because traditionally it has not been a place of public assembly, communication and discourse, and its physical characteristics separate it clearly from the nearby sidewalks where expressive activity is lawful.  *See id.*; *Grace*, 461 U.S. at 179; *Lawler*, 10 A.3d at 124; *Potts*, 919 A.2d at 1129; *Bonowitz*, 741 A.2d at 22.

b.   Section 6135 Is Reasonable and Viewpoint Neutral

Once it is established that the Supreme Court plaza is a nonpublic forum, it is apparent that section 6135 does not violate Plaintiff's free speech rights under the First Amendment.

First, the statute is a reasonable limitation on speech.  In finding the statute to be reasonable, the District of Columbia Court of Appeals has recognized two significant interests that are furthered by the statute: permitting the unimpeded ingress and egress of visitors to the Court, and preserving the appearance of the Court as a body not swayed by external influence.  *See Wall v. United States*, 521 A.2d 1140, 1144 (D.C. 1987).  The first of these is so evident as to require little further explanation.  The second is at least equally important.  The Supreme Court has explained that a state "has a legitimate interest in protecting its judicial system from the pressures which picketing near a courthouse might create."  *See Cox v. Louisiana*, 379 U.S. 559, 562 (1965); *see also id.* ("A State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence.").  And while the *Cox* case addressed a criminal statute that required a showing that the defendant intended to influence the administration of justice, the D.C. Court of Appeals has correctly recognized that preventing the appearance of such interest is a significant governmental interest even under a strict scrutiny analysis.  *Wall*, 521 A.2d at 1144-45.  It is certainly, at a bare minimum, a reasonable goal.

Second, the statute is viewpoint-neutral.  As noted above, section 6135 effectively prohibits all types of demonstrations and expressive activity on the Court grounds.  In prohibiting the display of any flag, banner or device "designed or adapted to bring into public notice a party, organization or movement," the Display Clause prohibits virtually all types of visual expression, irrespective of content.  *See Grace*, 461 U.S. at 176 ("We also accept the Government's contention, not contested by appellees, that almost any sign or leaflet carrying a communication, including Grace's picket sign and Zywicki's leaflets, would be 'designed or adapted to bring into public notice a party, organization or movement.'").  And under the

narrowing construction of the Assemblages Clause adopted by the District of Columbia courts, the Assemblages Clause similarly prohibits all types of group expressive activity and demonstrations.  Thus, because it is clear that section 6135 is both reasonable and viewpoint-neutral, it is a permissible restriction under the First Amendment.

2.   Section 6135 Is Not Overly Broad

Plaintiff's argument that section 6135 is overly broad, *see* Complaint, at ¶ 26, lacks merit. The First Amendment overbreadth doctrine permits an individual whose own speech or conduct may be prohibited to challenge a statute on its face "because it also threatens others not before the court – those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987); *see United States v. Williams*, 128 S. Ct. 1830, 1838 (2008) ("statute is facially invalid if it prohibits a substantial amount of protected speech ..., not only in an absolute sense, but also relative to the statute's plainly legitimate sweep").  A statute may be invalidated on its face only if the overbreadth is substantial, since it deviates from the "ordinary rule that a litigant may not rest a claim to relief on the legal rights or interests of third parties.  *See Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).  And even if a provision is substantially overbroad, it may not be invalidated unless it is not susceptible to "a limiting construction or partial invalidation [that] so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression," *Broadrick*, 413 U.S. at 613; *see also Boos v. Barry*, 485 U.S. 312, 329 (1988) (courts have a duty to avoid constitutional difficulties by applying an appropriate limiting constructions).

- 19 -

There is no colorable argument that either clause of the statute is overly broad, irrespective of the plaza's status under the public forum analysis.  By requiring that an individual display a flag, banner, or device "designed or adapted to bring into public notice a party, organization or movement," the Display Clause carefully limits culpability to those who (1) have affirmatively displayed such an item, and (2) have a specific intention to convey a message with it.  40 U.S.C. § 6135.  There is therefore no risk that the Display Clause will punish activity which is not "contrary to the government's legitimate interests" in "sheltering and insulating the judiciary from the appearance of political influence."  *See Pearson*, 581 A.2d at 357-58; *see also Potts*, 919 A.2d at 1130 n.1 (rejecting overbreadth challenge to Display Clause: "by limiting its curtailment of speech on Court grounds to the advocacy of causes or positions, the "display" clause minimizes the risk of restricting expressive activity outside the ambit of the government's legitimate interests.").

Nor can the Assemblages Clause be viewed as overly broad.  As noted above, the District of Columbia courts have adopted a narrowing construction of the Assemblages Clause precisely in order to avoid possible overbreath concerns that would arise from application of the literal language of the statute.  *See Boos v. Barry*, 485 U.S. at 329 (in evaluating vagueness and overbreadth challenges, courts should "consider the actual text of the statute as well as any limiting constructions that have been developed.").  That limiting construction allows application of the Assemblages Clause only for the protection of the Court building and grounds and persons and property therein, the maintenance of order and decorum therein, and to preserve the appearance of the Court as a body not swayed by external influence.  *See Pearson*, 581 A.2d at 357.  Because there have never been any prosecutions under the statute in federal court, *see* Dolan Dec. ¶ 9**,** this is, for all practical purposes, the definitive judicial construction of the

statute.  And the District of Columbia courts have had no difficulty in determining that, limited

in this way, the statute is not overly broad because it only prohibits the types of activity that are

consistent with the legitimate interests it is intended to address.  *Pearson*, 581 A.2d at 358

("[S]ection [6135] can withstand an overbreadth challenge because the statute only prohibits

group activity which is contrary to the government's legitimate interests").  At a minimum, even

if one might speculate about a hypothetical speaker whose First Amendment rights are arguably

being infringed, one certainly cannot say that the statute is "substantially overbroad."  *See*

*Broadrick*, 413 U.S. at 615.  As a result, plaintiff's overbreadth claims are meritless and should

be rejected.

   3. Section 6135 Is Not Unconstitutionally Vague

   Plaintiff claims that both the Assemblages Clause and the Display Clause are

unconstitutionally vague under the First and Fifth Amendments.  These arguments too are

without merit.

   The vagueness doctrine generally requires that a statute be precise enough to give fair

warning to actors that contemplated conduct is criminal, and to provide adequate standards to

enforcement agencies, factfinders, and reviewing courts.  *See, e.g., Connally v. General*

*Construction Co.*, 269 U.S. 385 (1926); *Lanzetta v. New Jersey*, 306 U.S. 451 (1939); *Colautti v.*

*Franklin*, 439 U.S. 379 (1979); *Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982).  The

vagueness inquiry must take into account the particular context of the regulation in question, and

the existence of a scienter requirement counsels against a finding that a particular statute is

vague.  *See Boos v. Barry*, 485 U.S. at 332; *Village of Hoffman Estates*, 455 U.S. at 497.  In

order to invalidate a statute on vagueness grounds, a plaintiff must show that the statute is

"impermissibly vague in all of its applications."  *Id.*

There is nothing arguably vague about the Display Clause of section 6135.  Anyone of common intelligence can certainly understand the meaning of the terms "flag" and "banner." And while the term "device" could have broad application, the fact that the entire Display Clause is limited to items "designed or adapted to bring into public notice a party, organization or movement" carefully limits application of the statute to situations where the defendant specifically intends to convey some form of message.  Over the years, the Display Clause has been applied without difficulty by the District of Columbia courts to address the display not only of flags and banners, but also such items as orange jump suits and black hoods designed to protest the detention of enemy combatants at Guantanamo Bay.  *See Kinane*, 12 A.3d at 25; *Potts*, 919 A.2d at 1129.  The District of Columbia courts have rejected vagueness challenges to the provision, see *Potts*, 919 A.2d at 1130; *Bonowitz*, 741 A.2d at 23-24, n.6, and the Supreme Court itself has suggested very strongly that the Display Clause is not unconstitutionally vague. *See Grace*, 461 U.S. at 176.  This Court should do likewise.

Nor is the Assemblages Clause unconstitutionally vague, particularly when narrowed in the manner that the District of Columbia courts have read the statute.  As noted above, to satisfy the literal language of this provision (*i.e.*, "to parade, stand or move in processions or assemblages"), an individual must have engaged in some form of group activity at the Court. There is nothing remotely vague about this requirement.  In addition, the statute is applied only for the "protection of the Supreme Court building and grounds and of persons and property within, as well as the maintenance of proper order and decorum, and to preserve the appearance of the Court as a body not swayed by external influence."  *See Pearson*, 581 A.2d at 357.  The District of Columbia courts have rejected vagueness challenges to this provision, and the conclusion that they have reached is plainly correct.  *Id.*; see also *Bonowitz*, 741 A.2d at 23-24,

n.6. What the Assemblages Clause prohibits, at its core, is demonstrations. Plaintiff himself explains that the reason he seeks access to the plaza is to picket and make speeches, either by himself or with others, and that he seeks to "explain how decisions of the Supreme Court have allowed police misconduct and discrimination against racial minorities to continue." *See* Complaint, at ¶ 29. At least so long as plaintiff's proposed conduct would be group activity as part of a "procession or assemblage," it would plainly violate the statute, and any vagueness challenge to its enforcement would be without foundation.[5]

4. The Display Clause of Section 6135 Is Not Applied in a Manner that Constitutes Impermissible Content or Viewpoint Discrimination under the First Amendment.

Plaintiff next argues that the Display Clause violates the First Amendment because, as applied, it amounts to content and viewpoint discrimination. He suggests that this is so because the Supreme Court Police "discriminate[] in favor of corporate speech and against political speech," apparently a reference to the fact that the Court Police do not read the statute to prohibit the wearing of clothing with corporate logos. *See* Complaint, at ¶¶ 16 and 40. He also argues that, as applied, it discriminates in favor of speech supportive of the United States government and the Supreme Court and against speech critical of the United States government and the Supreme Court. *See* Complaint, at ¶ 41. This last allegation apparently arises from the fact that

---

[5] Even particular conduct that does not directly undermine the statute's purposes would not render the statute unreasonable. It is well-settled that "the validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." *Ward v. Rock Against Racism*, 491 U.S. 781, 801 (1989); *see also Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 296-97 (1984) ("the validity of this regulation need not be judged solely by reference to the demonstration at hand") (citing *Heffron v. International Soc'y for Krishna Consciousness*, 452 U.S. 640, 652-53 (1981)). Thus, a restriction is reasonable even if, as applied to a particular case, it might arguably seem unnecessary. *See White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1533 n.106 (D.C. Cir. 1984) (restriction on demonstrations near White House justified by need to prevent terrorism, even though the appellants were unquestionably peaceful and orderly).

the Court itself flies a flag on the plaza, while the Display Clause restricts the ability of speakers to engage in other forms of protest.  *See* Complaint, at ¶ 15.[6]

As a general rule, content-based restrictions on speech in a public forum are subject to strict scrutiny.  *See, e.g., Denver Area Educational Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 800 (1996).  In order to determine whether a restriction on speech is content-based, a court must determine whether the restriction was adopted "without reference to the content of the regulated speech."  *See Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 763 (1994), quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  This inquiry "looks to the government's purpose as the threshold consideration."  *Madsen*, 512 U.S. at 763. The Supreme Court has had many occasions to address restrictions on demonstrations such as the one challenged here, and it has repeatedly found that broad and generally applicable restrictions on demonstrations do not amount to content discrimination.  In *Hill v. Colorado*, 530 U.S. 703 (2000), for example, the Court addressed a state statute that made it illegal to approach another person to distribute a leaflet, display a sign, or engage in oral protest or education, within 100 feet of the entrance to a health care facility.  *Id.*, at 707.  In upholding the statute against First Amendment challenge, the Supreme Court first explained that the statute was content-neutral, and one of the reasons for that conclusion was that enforcement of the statute required no more of police than determining whether the individual was intending to convey a message.  *Id.*, at 721; *see also Schenk v. Pro-Choice Network of Western New York*, 519 U.S. 357, 366-67 (1997); *Madsen*, 512 U.S. at 759.

---

[6] It is unclear whether an as applied First Amendment claim is cognizable based upon allegations of viewpoint or content discrimination in enforcement of an otherwise lawful statute.  Although there are a number of cases addressing challenges to government policies under this theory, those policies have generally been formally adopted written policies, rather than inferred enforcement decisions such as the ones that plaintiff seeks to challenge here.  For the purposes of this motion to dismiss, however, defendants will assume that such an as applied challenge is possible.

Viewpoint discrimination is a subset of content discrimination in which the government not only restricts speech because of the subject discussed, but because of disagreement with the message that the speaker conveys. *Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 829 (1995). Because "[t]he First Amendment generally prevents the government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed," this type of discrimination is generally prohibited, regardless of the forum status of the location where the speech takes place. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."); *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others."). But presumptively improper viewpoint discrimination exists only where "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829.

As an initial matter, the fact that the plaza is a nonpublic forum means that the principles relating to content discrimination do not apply there. *See Davenport v. Washington Education Ass'n*, 551 U.S. 177, 189 (2007) ("[W]hen the government permits speech on government property that is a nonpublic forum, it can exclude speakers on the basis of subject matter, so long as the distinctions drawn are viewpoint neutral and reasonable in light of the purposes served by the forum."). Rather, the sole question would be whether enforcement of the statute rises to the heightened level of being viewpoint discrimination, *i.e.*, a limitation on speech adopted because of disagreement with the speaker's message. But regardless, there is simply nothing in the

Supreme Court Police's enforcement of the Display Clause to suggest either viewpoint or content discrimination.

That the Police do not arrest tourists who happen to be wearing shirts with Nike logos does not, as plaintiff appears to believe, suggest that the Court is motivated by a desire to support Nike.  Rather, it reflects a mere recognition that a Nike logo, unlike the sign that plaintiff brought to the Supreme Court plaza, is not a device "designed or adapted to bring into public notice a party, organization or movement" within the meaning of the statute itself.  If the Display Clause itself does not amount to content or viewpoint discrimination, as plaintiff appears to acknowledge and as is ultimately indisputable under the cases discussed above, then a natural and proper application of that statute cannot amount to illegal discrimination.

Nor does the fact that the Court flies a flag on the plaza support a claim of viewpoint discrimination.  First, the federal government's own speech is not subject to First Amendment scrutiny, so one cannot compare government and private speech under the viewpoint discrimination analysis.  *See Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 553 (2005) (government speech exempt from First Amendment scrutiny); *Oberwetter*, 639 F.3d at 553 (rejecting argument that content-based discrimination was present simply because the government conducts an official ceremony for Jefferson's birthday each year, noting that "this is an instance of government speech rather than an open invitation for private speakers").  Second, there is no conceivable argument that flying the American flag might be interpreted as in violation of the Display Clause: although it is obviously a "flag," Congress could not possibly have intended that the government's own flying of the flag might be illegal.  As a result, the Court's decision to arrest those flying flags of banners with political messages, but to fly the

American flag itself, is simply a natural enforcement decision of an otherwise constitutional statute.  It certainly is neither content nor viewpoint discrimination.

> 5.   The Display Clause of Section 6135 Is Not Applied in a Manner that Violates the Equal Protection Clause.

Plaintiff's final claim is that the Display Clause violates the Equal Protection Clause of the Fifth Amendment.[7]  Count V of the Complaint alleges that this clause constitutes improper content-based discrimination because, "as applied, it discriminates in favor of [the] United States government, litigants before the Supreme Court, and their attorneys, as speakers, and against private citizens as speakers."  Complaint, at ¶ 43.  This allegation appears to be grounded on the fact that the Court allows attorneys and litigants in cases before the Court to speak to the media on the plaza after oral arguments.  *See* Complaint, at ¶ 12.

Plaintiff's equal protection claim amounts to a collateral attack on the plaza as a nonpublic forum, and the First Amendment analysis should control.  Although the Supreme Court has on a few occasions analyzed restrictions on speech under the Equal Protection Clause of the Fifth Amendment, it has also emphasized that it is primarily the First Amendment analysis that controls the issue, and that equal protection analysis cannot require that allegations of discrimination based upon the content of speech receive stricter review than the First Amendment requires.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 384 n.4 (1992).  More specifically, where, as here, a person does not have a First Amendment right of access to a space (such as a nonpublic forum like the Court plaza), the grant of access to another does not burden a fundamental right under the Equal Protection Clause, and strict scrutiny does not apply.  *See Perry Educ. Assn.*, 460 U.S. at 54-55 ("[o]n government property that has not been made a

---

[7]  The Equal Protection claim in Count V of the Complaint relates exclusively to the Display Clause and does not implicate the Assemblage Clause.

public forum, not all speech is equally situated, and the State may draw distinctions which relate to the special purpose for which the property is used.").  Moreover, section 6135 also does not significantly burden freedom of expression because protesters such as plaintiff can utilize the public sidewalks in front of the Supreme Court.

But even in a public forum, a claim such as this one would be without merit.  The Supreme Court has applied strict scrutiny under the Equal Protection clause only to *statutes* that discriminate on their face on the basis of content.  *See Carey v. Brown*, 447 U.S. 455 (1982); *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92 (1972) (holding that "[t]he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives.").  In those few cases finding an Equal Protection violation through content-based discrimination between speakers on government property, the statutes in question prohibited most forms of demonstrations but allowed demonstrations in connection with labor disputes.  *See Carey*, 447 U.S. at 457; *Mosley*, 408 U.S. at 95-96.  In these circumstances, the Court held that the statutes were subjected to strict scrutiny, so that they could be upheld only if they were "finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized."  *Carey*, 447 U.S. at 461-62.

In contrast, strict scrutiny does not apply here because section 6135 itself does not discriminate on the basis of content.  In addition, even evaluating enforcement decisions of the Supreme Court Police, protesters such as plaintiff cannot be properly compared with speech by attorneys and parties in cases before the Court for Equal Protection Clause purposes.  An attorney or party speaking to the media after an argument typically would not be in violation of the Display Clause, since the speaker presumably would not be showing a flag, banner or other similar device.  As with the Court Police's decision not to preclude the wearing of corporate

logos, then, the decision not to enforce the Display Clause during press availability simply

reflects a sensible interpretation of the plain language of the statute.   What is more, even in the

unlikely event that speech by an attorney or party after an oral argument might arguably violate

the statute in a particular instance, this form of speech is in a very real sense part of the business

of the Supreme Court itself, and thus is of an entirely different character from protests such as

the one under taken by plaintiff in this case.  As a result, the differing treatment given to the two

forms of speech cannot conceivably trigger heightened scrutiny under the Equal Protection

Clause.

      Plaintiff's Equal Protection claim, therefore, should be dismissed.

CONCLUSION

      For the reasons stated above, it is clear that all of plaintiff's claims should be dismissed.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar No. 498610
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No.  924092
Acting Civil Chief

   /s/   *Jane M. Lyons*
JANE M. LYONS, D.C. Bar No. 451737
Assistant United States Attorney
555 Fourth Street, N.W. – Room E4104
Washington, D.C.   20001
(202) 514-7161 (phone)
(202) 514-8780 (fax)
Jane.Lyons@usdoj.gov

Of Counsel:
SCOTT S. HARRIS, Counsel
Supreme Court of the United States
1 First Street, N.E.
Washington, D.C. 20543